UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OFFICIAL BRANDS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2199-B |
| | § | |
| ROC NATION SPORTS, LLC and ROC | § | |
| NATION, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Roc Nation Sports, LLC's 12(b)(2) Motion to Dismiss Based on Lack of Personal Jurisdiction (Doc. 6). For the reasons that follow, the Court **DENIES** the Motion **without prejudice**.

## I.

## BACKGROUND

This case is based upon Defendants Roc Nation, LLC's ("Roc Nation") and Roc Nation Sports, LLC's ("RNS") alleged interference with a contract between Plaintiff Official Brands, Inc. ("Official Brands") and Dallas Cowboys wide receiver Dez Bryant ("Bryant"). Official Brands is a Florida corporation, and RNS is a Delaware limited liability company. Doc. 1-4, Original Pet. ¶¶ 2–3. According to Official Brands, it signed a contract with Bryant, acting on behalf of his company Dez I Enterprises, in 2014 to develop and market his proposed brand, known as "Throw up the X." *Id.* ¶¶ 11-12. The contract was to run from July 1, 2014 until June 30, 2016. *Id.* ¶ 12. As a result of this contract, Official Brands "performed unprecedented services" and "invested substantial time and

money" in an attempt to grow the "Throw up the X" brand. *Id.* ¶ 13. By the end of 2014, the "brand started showing signs of real progress." *Id.* ¶ 18. In February 2015,[1] however, Bryant terminated the contract and "ceased all contact with" Official Brands. *Id.* ¶ 22. The reasons behind this abrupt end to the relationship are the subject of this litigation, as Official Brands alleges that Roc Nation and RNS improperly influenced Bryant's decision.

In late 2014, several months after signing the contract with Official Brands, Bryant executed two contracts with RNS: a representation agreement and a management agreement.[2] Doc. 7, Ex. A, Decl. of Juan Perez ¶ 5; *see also* Doc. 1-4, Original Pet. ¶ 21. Bryant and RNS executed these contracts in Texas. Doc. 7, Ex. A, Decl. of Juan Perez ¶ 6. After signing Bryant, Official Brands alleges, RNS "embarked upon a scheme to . . . unlawfully induce Dez Bryant to terminate . . . [the] contract with" Official Brands. Doc. 1-4, Original Pet. ¶ 21. After Bryant did so, Official Brands sued Roc Nation and RNS in the 101st Judicial District Court of Dallas County, Texas. Doc. 1, Notice of Removal ¶ 1. Defendants then removed the case to this Court, *see generally id.*, where RNS filed the instant Motion, alleging that the Court lacks personal jurisdiction over it. Doc. 6, Def.'s Mot. to Dismiss. The Court has received Official Brands' response to the Motion and RNS' reply. Docs. 18, 23. The Motion is now ready for review.

---

[1] In its Original Petition, Official Brands alleges that Bryant terminated the contract on February 24, 2014. Based on (1) the fact that Bryant did not execute the contract with Official Brands until July 2014, and (2) Official Brands' statement that it was in contact with Bryant "[a]s recently as the 2015 Super Bowl" regarding the development of "Throw up the X," Doc. 1-4, Original Pet. ¶ 20, the Court considers the 2014 date to be a scrivener's error.

[2] Official Brands alleges that Bryant's contracts were with both defendants. *See* Doc. 1-4, Original Pet. ¶ 21. The Court need not determine Roc Nation's involvement here, though, because only RNS filed this Motion.

## II.

## LEGAL STANDARD

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff need only establish a prima facie case of jurisdiction; proof by a preponderance of the evidence is not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). In deciding whether the plaintiff has made a prima facie case, non-conclusory factual allegations in the complaint must be taken as true. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). The Court may also consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Spademan*, 772 F.2d at 1192. All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The Court is not, however, required to credit conclusory factual or jurisdictional allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

"A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a forum state court." *Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994). A Texas state court may exercise jurisdiction over a non-resident if: (1) the nonresident is amenable to service of process under Texas's long-arm statute; and (2) asserting jurisdiction over the nonresident comports with the Constitution's Due Process Clause. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Schlobohm v. Schapiro*, 784

S.W.2d 355, 357 (Tex. 1990). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 205 (5th Cir. 1996). Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* (citation omitted). To demonstrate specific jurisdiction, the plaintiff must establish both that the defendant in question undertook some activity in, or purposefully directed some act at, Texas, and that the plaintiff's claims arise out of or result from those activities. *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 325 (5th Cir. 1996). In other words, there must be "a sufficient nexus between the non[]resident's contacts with the forum and the cause of action." *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010).

"General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). A plaintiff's own activity, without more, cannot justify a court's exercise of jurisdiction over a nonresident. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). "Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). The analysis ultimately reduces to whether the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

## III.

## ANALYSIS

A.   *Minimum Contacts*

The Court must first determine whether RNS has the requisite "minimum contacts" with Texas to justify exercising personal jurisdiction over it.[3] Official Brands has asserted only that the Court may exercise specific jurisdiction over RNS, so the Court will dispense with any analysis of general jurisdiction. In its Original Petition, Official Brands contends that the Court has specific jurisdiction over RNS because RNS "(1) contracted with Dez Bryant and both [RNS] and Dez Bryant are to perform the contract in whole or part in Texas; and (2) committed the torts of . . . tortious interference with contractual relations and tortious interference with advantageous business relations." Doc. 1-4, Original Pet. ¶ 4. RNS disagrees, arguing that specific jurisdiction is lacking because its only contact with Texas is the signing of Bryant's two contracts, and Official Brands' claims arise out of other alleged conduct (i.e., the supposed disparaging false statements that RNS made to Bryant). Doc. 6, Def.'s Mot. to Dismiss ¶¶ 15–19.

---

[3] The Court acknowledges that "[i]n determining whether specific jurisdiction exists, . . . [it] must conduct the minimum contacts analysis separately for each cause of action." *Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co., Ltd.*, No. 14-CV-1108, 2015 WL 2341063, at *3 (N.D. Tex. May 15, 2015). Both of Official Brands' claims arise out of the same set of operative facts, however. *See* Doc. 1-4, Original Pet. ¶¶ 21–35. Specific jurisdiction for both claims, then, turns on a single analysis of this unified set of facts.

1.    RNS' Contracts with Bryant

Official Brands' first argument—that RNS' contracts with Bryant are sufficient to establish minimum contacts with Texas—is not persuasive. Those contracts are not the basis for Official Brands' claims, which are instead based upon RNS' purported activity *after* the execution of the agreements. *See* Doc. 1-4, Original Pet. ¶ 21 (alleging that RNS "embarked upon" a plan to induce Bryant to terminate the contract with Official Brands "*[f]ollowing* Defendants' signing . . . of Dez Bryant to a Standard Representation Agreement" (emphasis added)). A party's contract with a Texas citizen will not support specific jurisdiction over that party when a plaintiff's claims do not arise out of that contract. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854–55 (5th Cir. 2000). Additionally, Official Brands' claims do not appear to be directly related to RNS' contracts with Bryant, either. As far as the Court can tell, RNS' alleged interference would still have given rise to this lawsuit even if Bryant had never signed those contracts. RNS' contracts with Bryant are therefore insufficient to sustain personal jurisdiction over RNS.

2.    RNS' Alleged Acts of Tortious Interference

As an initial matter, the Court must clarify what causes of action Official Brands is asserting. The two counts contained in the Original Petition are entitled "Tortious Interference with Contractual Relations" and "Tortious Interference with Advantageous Business Relations." Doc. 1-4, Original Pet. ¶¶ 24–30, 31–35. But under Texas law, "[t]he theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations." *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 09-CV-0419, 2009 WL 4016117, at *2 (N.D. Tex. Nov. 20, 2009) (quoting *Dunn v. Calahan*, No. 03-05-0426-CV, 2008 WL 5264886, at *3 (Tex.

- 6 -

App.—Austin Dec. 17, 2008, pet. denied) (mem. op.)). In the briefing before this Court, Defendants have treated Official Brands' second claim as one for tortious interference with prospective contractual relations, and Official Brands has acquiesced in this characterization. *See, e.g.*, Doc. 4, Def.'s 12(b)(6) Mot. to Dismiss ¶ 3; Doc. 18, Pl.'s Resp. to Def.'s Mot. to Dismiss for Lack of Jurisdiction 1 [hereinafter "Pl.'s Resp."]. The Court, therefore, will do likewise.

In the Original Petition, Official Brands does not specifically allege that RNS' acts of interference occurred in Texas. On the other hand, its allegations do not rule out that possibility. Indeed, in its response to this Motion, Official Brands asserts that "it is fanciful to think that any and all contacts [RNS] . . . had with Bryant were conducted in New York." Doc. 18, Pl.'s Resp. 7. Conversely, RNS argues that all contact with Bryant since the October 2014 meeting has occurred either in New York or via electronic communications emanating from its New York offices. Doc. 6, Def.'s Mot. to Dismiss ¶ 19; Doc. 7, Ex. A, Decl. of Juan Perez ¶¶ 6–7.

Even if RNS' version of events is true, the fact that its electronic communications with Bryant originated in New York does not preclude a finding of specific jurisdiction. If RNS directed any of the communications about which Official Brands now complains at Texas (i.e., Bryant's state of residence), then those communications could be sufficient to sustain personal jurisdiction. *See Wien Air*, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332–34 (5th Cir. 1982). RNS' Motion does not negate this possibility, as RNS admits that Bryant received its communications "in whatever state he fortuitously happened to be in at that time." Doc. 6, Def.'s Mot. to Dismiss ¶ 19. But the burden is on Official Brands to make a prima facie showing of jurisdiction, and there is simply no evidence whatsoever that Bryant

received any of the allegedly interfering communications while he was in Texas. Official Brands asserts that "[o]bviously, contacts were made via text messages, telephone calls[,] or emails," Doc. 18, Pl.'s Resp. 7, but this statement is conclusory and therefore the Court need not accept it as true. *Panda Brandywine Corp.*, 253 F.3d at 869. More to the point, even if the Court did credit this statement, the fact that there were "text messages, telephone calls[,] or emails" between RNS and Bryant does *not* establish that any of them were directed *at Texas*. Official Brands has therefore failed to carry its burden to show that the Court may exercise specific jurisdiction over RNS.[4]

B.     *Jurisdictional Discovery*

Official Brands has requested that it be allowed to conduct jurisdictional discovery in the event that the Court "determine that additional evidence of the jurisdictional nexus is necessary." Doc. 18, Pl.'s Resp. 5. RNS opposes this request, arguing that Official Brands has not shown that such discovery is necessary. Doc. 23, Def.'s Reply 6–7.

The decision to allow jurisdictional discovery is committed to the Court's discretion. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). When seeking such discovery, a plaintiff must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The Court finds this requirement a bit perplexing—if a plaintiff is only required to make a prima facie showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2), it is difficult to imagine what quantum of proof would qualify as a "preliminary showing" but not satisfy the prima facie requirement, if the former is to have any substance to it.

---

[4] Because the Court has determined that Official Brands has not established that RNS has the necessary minimum contacts with Texas to sustain personal jurisdiction, it need not decide whether the exercise of personal jurisdiction over RNS would comport with "traditional notions of fair play and substantial justice." *See Wilson*, 20 F.3d at 650 n.7.

Moreover, there is a Catch-22 problem, where a plaintiff seems to be expected to prove personal jurisdiction to acquire the evidence necessary to prove personal jurisdiction. In any event, the Court looks for guidance to the case that the Fifth Circuit cited as authority for the "preliminary showing" requirement, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003). In that case, the Third Circuit stated that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* at 456 (internal quotation marks and citation omitted). Official Brands' factual allegations pass muster under this standard. It has asserted that RNS communicated with Bryant electronically, which RNS does not dispute, and that some of those communications were tortious. Doc. 1-4, Original Pet. ¶¶ 21, 23. Moreover, it has raised the possibility, which RNS has not refuted, that those communications were received in Texas. The existence of the requisite contacts is therefore possible, and the Court is satisfied that Official Brands has made a "preliminary showing of jurisdiction" to merit jurisdictional discovery.

The Court also notes that jurisdictional discovery is only appropriate when a motion to dismiss raises an issue of fact. *See Kelly*, 213 F.3d at 855. Here, RNS' Motion and Official Brands' response raise the question of whether Bryant received any of the communications at issue while he was in Texas. Discovery in this case would thus not be a "fishing expedition," but rather a targeted approach to resolving a single discrete factual question. Therefore, although Official Brands has not specifically identified the discovery it seeks, the Court believes that it is proper to permit limited jurisdictional discovery with respect to the substance of RNS' communications with Bryant and where they were received. These records will definitively establish whether Official Brands' claims arise out of any of RNS' communications directed at Texas, which in turn will resolve the issue of

personal jurisdiction.

## IV.

## CONCLUSION

Based on the foregoing, the Court **DENIES without prejudice** RNS' 12(b)(2) Motion to Dismiss Based on Lack of Personal Jurisdiction. The Court further **ORDERS** that Official Brands is permitted to conduct discovery limited to the issue of RNS' electronic communications with Bryant and where such communications were received. This discovery must be completed on or before **March 7, 2016**.

SO ORDERED.

SIGNED: December 8, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE