UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OFFICIAL BRANDS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2199-B |
| | § | |
| ROC NATION SPORTS, LLC and ROC NATION, LLC, | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Roc Nation, LLC's 12(b)(6) Motion to Dismiss for Failure to State a Claim, or Alternatively, 12(e) Motion for a More Definite Statement (Doc. 4). For the reasons that follow, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss, and **DENIES** the Motion for a More Definite Statement.

### I.

### BACKGROUND

The events underlying this case kicked off in July 2014, when Plaintiff Official Brands, Inc. ("Official Brands") signed a contract with Dez I Enterprises, Inc. ("Dez I"), a corporation owned by Dallas Cowboys wide receiver Dez Bryant ("Bryant"). Doc. 1-4, Original Pet. ¶ 12. The contract authorized Official Brands "to utilize Dez Bryant's name, nickname, initials, autograph, facsimile signature, photograph, likeness, video, and/or endorsement in connection with the advertisement, marketing, promotion, and sale of" Bryant's brand, called "Throw up the X." *Id.* ¶¶ 11–12. This arrangement was drawn up to run from July 1, 2014 until June 30, 2016, but it was stopped short

when Bryant prematurely terminated the contract on February 24, 2015.[1] *Id.* ¶¶ 12, 22. According to Official Brands, Bryant did this because Defendant Roc Nation, LLC ("Roc Nation"), along with Roc Nation Sports, LLC ("RNS") "embarked upon a scheme to . . . unlawfully induce Dez Bryant to terminate [the] . . . contract with" Official Brands. *Id.* ¶ 21. Roc Nation's and RNS' alleged gameplan included "unsolicited contact" with Bryant, "false and disparaging statements" about Official Brands, and "improper enticements to induce" him to cancel the contract. *Id.*

The reason for this conduct, Official Brands asserts, was to cause Bryant to "move all of his off-field business" to Roc Nation and RNS. *Id.* ¶ 23. According to the Original Petition, Bryant signed a standard representation agreement with both Defendants in November 2014, after which the alleged interference with Official Brands' contract began. *Id.* ¶ 21. For example, Official Brands states that Kimberly Miale, who allegedly works for Defendants, "reached out to [Official Brand's] officers on multiple occasions seeking a copy of the contract" between Official Brands and Dez I. *Id.* ¶ 17. Roc Nation challenges this, arguing that it has never had a contractual relationship with Bryant and that Miale is "not an agent, employee[,] or representative" of Roc Nation. Doc. 4, Def.'s Mot. to Dismiss ¶ 1. It now seeks dismissal for failure to state a claim or, alternatively, a more definite statement of Official Brands' claims. *Id.* The Court has received Official Brands' response (Doc. 19) and Roc Nation's reply (Doc. 22), meaning that the Motions are ready for review.

---

[1] As the Court stated in its recent Memorandum Opinion and Order, it considers the date of termination included in the Original Petition (February 24, 2014) to be a scrivener's error. *See* Doc. 24, Mem. Op. & Order 2 n.1 [hereinafter "12(b)(2) Order"].

## II.

## LEGAL STANDARD

A.  *Motion to Dismiss for Failure to State a Claim*

In a case that has been removed from state court, the proper pleading standard to apply when deciding a motion to dismiss is that of the state from whose court the case has been removed. *Craig Penfold Props., Inc. v. Travelers Cas. Ins. Co.*, No. 14-CV-0326, 2015 WL 356885, at *2 (N.D. Tex. Jan. 28, 2015); *see also De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537 (5th Cir. 2005) (applying the Texas pleading standard on a motion to dismiss claims in a case removed from Texas state court); *Sutton v. Airsep Corp.*, No. 11-CV-2669, 2012 WL 253959, at *3 (N.D. Tex. Jan. 27, 2012) (applying state pleading standard on motion to remand because "state court plaintiffs should not be required to anticipate removal to federal court"). In a case removed from a Texas state court, the Court applies the Texas pleading standard. Traditionally, Texas courts have applied a more liberal pleading standard than the federal one, upholding a petition as long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Rule 91a of the Texas Rules of Civil Procedure, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex. R. Civ. P. 91a. Though not identical to the Rule 12(b)(6) standard, the Texas Courts of Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on the Rule 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d

752, 754 (Tex. App.—Beaumont 2014, pet. denied). Accordingly, this Court will do the same.

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B. *Motion for a More Definite Statement*

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed" when it is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "When a party moves for a more definite statement, a

court must determine whether the complaint is such that a party cannot reasonably be required to frame a responsive pleading." *Ash Grove Tex., L.P. v. City of Dall.*, No. 08-CV-2114, 2009 WL 3270821, at *7 (N.D. Tex. Oct. 9, 2009) (citing *Mitchell v. EZ Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). "[M]otions for a more definite statement are generally disfavored," and district courts have "significant discretion" when considering them. *Id.* (internal citations and quotations omitted).

### III.

### ANALYSIS

The Court has previously addressed the question of what claims Official Brands has advanced in its Original Petition, and has determined that Official Brands seeks recovery for (1) tortious interference with contractual relations, and (2) tortious interference with prospective contractual relations. Doc. 24, 12(b)(2) Order 6–7. It will decide these Motions accordingly.

A.   *Motion to Dismiss*

   1.   Tortious Interference With Contractual Relations

To prevail on a claim for tortious interference with an existing contract, a plaintiff must show "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The alleged interference generally must have induced a breach of the contract to be actionable. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) ("Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference."). The fact that a contract is

terminable at will, however, "is no defense to an action for tortious interference with its performance." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989).

Roc Nation argues that Official Brands' allegations are conclusory, and that it has failed altogether to allege intent on the part of Roc Nation's employees to interfere tortiously with Official Brands' contract. Doc. 4, Def.'s Mot. to Dismiss ¶¶ 4–7. Official Brands responds that its allegations are sufficient to survive a motion to dismiss under Rule 12(b)(6). Doc. 19, Pl.'s Resp. 4–7.

### i. *Existing contract*

Official Brands has alleged the existence of a contract subject to interference. The Original Petition describes a two-year agreement between Official Brands and Dez I that authorized the former to use Bryant's likeness, signature, etc., to grow the "Throw up the X" brand. Doc. 1-4, Original Pet. ¶ 12. This is sufficient to establish the first element of the claim.

### ii. *Willful and intentional interference*

"To show tortious interference, a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc.* 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). "[T]he interfering party must have 'actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Id.* (quoting *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277–78 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).

Official Brands' allegations are more than sufficient to meet this standard. Roc Nation clearly knew of the contract, as Miale—its employee—requested a copy of it "on multiple occasions."[2] Doc. 1-4, Original Pet. ¶ 17. The Original Petition further alleges that Roc Nation provided Bryant with "numerous improper enticements *in order to induce . . . [him] to terminate the contract*" and to convince him to shift his business to Roc Nation. *Id.* ¶¶ 21, 23 (emphasis added). These assertions, taken as true, demonstrate that Roc Nation "desire[d] to cause the consequences of [its] act," *Amigo Broad.*, 521 F.3d at 490, and thus are sufficient to establish the second element of the claim.

The allegations in this case resemble those in *Hambric Sports Management, LLC v. Team AK, Inc.*, No. 09-CV-1662, 2010 WL 2605243 (N.D. Tex. June 29, 2010). There, the plaintiff was a sports agency that had represented golfer Anthony Kim, and one of the defendants was a rival management company that had allegedly attempted to lure Kim away from the plaintiff. The court found that this element was fulfilled on the basis of allegations that the defendant (1) "possessed [and reviewed] copies" of the plaintiff's contract with Kim; (2) "entertained the prospect of entering into an agency agreement with Kim"; and (3) "research[ed] Kim's marketability with potential endorsement companies while the Agreement was in effect." *Id.* at *8. Here, Roc Nation allegedly (1) requested a copy of the contract between Official Brands and Dez I; (2) actually entered into a representation agreement with Bryant; and (3) blocked endorsement agreements that Official Brands

---

[2] Roc Nation asserts that Miale is not, in fact, its employee. But that is a factual dispute, and on a motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Therefore, the Court assumes as true Official Brands' allegation that Miale is Roc Nation's employee, or at least that she was at the time relevant to this litigation.

sought to negotiate. Doc. 1-4, Original Pet. ¶¶ 17, 19, 21. Accordingly, the Court concludes that this activity, if true, would constitute intentional and willful interference.

     *iii.*  *Proximate cause*

Establishing proximate cause requires a plaintiff to show that "the defendant took an active part in persuading a party to a contract to breach it." *Amigo Broad.*, 521 F.3d at 493 (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)). It is unclear whether Dez I's termination of the contract with Official Brands was a breach.[3] As explained above, though, the termination of an at-will contract can give rise to a tortious interference claim, even if that termination was not a breach. *See Sterner*, 767 S.W.2d at 688–89.[4] It follows logically, then, that proximate cause is shown in a case such as this when a plaintiff alleges that the defendant actively persuaded a party to an at-will contract to terminate it.

Official Brands has made this showing. It asserts that Roc Nation initiated "unsolicited contact" with Bryant, made "false and disparaging statements" about Official Brands, and provided Bryant "with numerous improper enticements," all to incentivize Bryant to terminate the contract with Official Brands. Doc. 1-4, Original Pet. ¶ 21. These allegations suffice to show active persuasion on Roc Nation's part. The third element is therefore fulfilled.

---

[3] Official Brands does assert that, absent Roc Nation's interference, "Bryant would not have attempted to terminate and breach the agreement." Doc. 1-4, Original Pet. ¶ 29. This phrasing suggests that the termination and breach were distinct effects of the interference, though it is admittedly ambiguous.

[4] It is possible to read *Sterner* as holding only that the fact that a contract was terminable at will is not a defense against a tortious interference claim arising out of some other breach of the contract. The facts of *Sterner*, however, belie that interpretation. In that case, the plaintiff was a construction worker who sued Marathon for allegedly causing the plaintiff's employer—an independent contractor—to terminate his at-will employment contract. 767 S.W.2d at 688. No independent breach of the employment contract was alleged, yet the Texas Supreme Court still found that the plaintiff had stated a claim for tortious interference. *Id.* at 688–89.

    *iv.*  *Actual damages or loss*

Official Brands has also adequately alleged this element, as it asserts that Roc Nation's interference resulted in the termination of the contract and the accompanying revocation of Official Brands' ability to use and promote "Throw up the X." *Id.* ¶ 22. This constitutes actual damages or loss. *Cf. U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 706–07 (W.D. Tex. 2013) (denying motion to dismiss where plaintiff alleged that defendant's tortious interference resulted in the loss of a sale to which the plaintiff was otherwise contractually entitled).

The Original Petition thus contains satisfactory allegations of all four elements of tortious interference with an existing contract. Accordingly, Roc Nation is not entitled to dismissal of this claim.

  2.  <u>Tortious Interference With Prospective Contractual Relations</u>

The elements of Official Brands' second claim are:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Roc Nation contends, again, that the allegations in the Original Petition are conclusory and therefore insufficient to state a claim, and that Official Brands has failed to allege the third element of the claim. Doc. 4, Def.'s Mot. to Dismiss ¶¶ 4–6, 8. Official Brands rejects this reading, arguing that it has properly alleged each element of the claim. Doc. 19, Pl.'s Resp. 4–7.

*i.   Reasonable probability of future business relationship*

This element requires more than speculation or the bare possibility that a plaintiff would have entered into a future business relationship. *See Flying Crown Land Grp. v. Reed*, No. 15-CV-1225, 2015 WL 4750786, at *2 (N.D. Tex. Aug. 11, 2015). "[M]ere negotiations" are not enough, but a pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Gallagher Benefit Servs., Inc.*, No. 11-CV-0685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012) (quoting *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). Here, Official Brands and Dez I not only had a pre-existing business relationship, but a contractual arrangement. Moreover, as a result of Official Brands' efforts, "the [Throw up the X] brand started showing signs of real progress at the end of 2014," resulting in "tens of thousands of dollars" in royalties for Dez I. Doc. 1-4, Original Pet. ¶ 18. The Court is satisfied that these allegations demonstrate a reasonable probability that Official Brands and Dez I would have entered into a future business relationship.

*ii.   Conscious desire/substantial certainty*

Official Brands has also pled that Roc Nation carried out its interference with the intent that Bryant would "move all of his off-field business to" it. *Id.* ¶ 23. This intent constitutes a conscious desire to interfere with any prospective relations between Official Brands and Dez I—if Bryant did indeed move all of his off-field business to Roc Nation, that would necessarily prevent Official Brands from entering into any future business relationship with Dez I. This element is therefore also fulfilled.

### iii. *Independently tortious or unlawful behavior*

A plaintiff seeking recovery for tortious interference with prospective contractual relations must "prove that the defendant's conduct was independently tortious or wrongful as an element of the cause of action." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 705 (Tex. 2015) (quoting *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). Consequently, such a plaintiff is required to plead independently tortious behavior to survive a motion to dismiss under Rule 12(b)(6). *XP Innovations Inc. v. Black Rapid, Inc.*, No. H-13-1856, 2013 WL 6230368, at *4 (S.D. Tex. Dec. 2, 2013). "'Independently tortious' does 'not mean that the plaintiff must be able to prove an independent tort'"; rather, a plaintiff must "prove that the defendant's conduct would be actionable under a recognized tort." *N. Cypress Med. Ctr.*, 2012 WL 2870639, at *7 (quoting *Sturges*, 52 S.W.3d at 726).

The conduct in which Roc Nation allegedly engaged is independently tortious. Roc Nation purportedly made "false and disparaging statements to . . . Bryant concerning [Official Brands]" in an effort to induce him to terminate the contract with Official Brands. Doc. 1-4, Original Pet. ¶ 21. This Court has previously found that false statements made to prevent the formation of an agreement are independently tortious. *Cooper v. Harvey*, No. 14-CV-4152, 2015 WL 2359518, at *7 (N.D. Tex. May 18, 2015) (Boyle, J.). Although Official Brands has not specifically alleged that the statements were knowingly false, as the plaintiff in *Cooper* did, the Court construes these facts "in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Thus, Official Brands has adequately pled this element.

     *iv.*  *Proximate cause and actual damages*

  Where Official Brands' claim falters, however, is on the fourth and fifth elements. To state a claim for tortious interference with prospective business relations, a plaintiff must show an actual loss suffered, and that the defendant's tortious interference proximately caused that loss. But such a loss must be ascertainable at the time of the litigation. *See Impala African Safaris, LLC v. Dall. Safari Club, Inc.*, No. 13-CV-2175, 2014 WL 4555659, at *8 (N.D. Tex. Sept. 9, 2014) (dismissing a tortious interference with prospective relations claim where the harm to the plaintiff, if any, would not occur until after the complaint, amended complaint, and opposition to the motion to dismiss had been filed). Here, the contract between Official Brands and Dez I was to run until June 30, 2016. Any prospective contractual relation, then, would have occurred *after* that time. Therefore, any loss Official Brands may suffer in the future as the result of Roc Nation's alleged interference is purely speculative. In other words, Official Brands has not yet suffered any actual damages with regard to prospective contractual relations. For the same reason, its allegations also fail to demonstrate that Roc Nation's actions proximately caused it loss.

  Official Brands has failed to sufficiently allege each element of a tortious interference with prospective contractual relations claim. That claim therefore cannot survive Roc Nation's Motion and should be dismissed. Furthermore, because any damages would not be ascertainable for several months at least, these defects are incurable. Thus, the Court will not grant Official Brands leave to amend its claim. *See Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) ("[A] trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.")

B.     *Motion for a More Definite Statement*

The Court has determined that Official Brands has successfully stated a claim for tortious interference with contractual relations, and therefore believes that a more definite statement as to that claim is not necessary. In a similar vein, because the Court has concluded that Official Brands' tortious interference with prospective contractual relations claim should be dismissed, a more definite statement as to that claim would be superfluous. Accordingly, the Court will deny Roc Nation's alternative Motion for a More Definite Statement.

### IV.

### CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Roc Nation's 12(b)(6) Motion to Dismiss for Failure to State a Claim. The Court **DISMISSES** Official Brands' claim for tortious interference with prospective contractual relations. The Court also **DENIES** Roc Nation's Motion for a More Definite Statement.

**SO ORDERED.**

**SIGNED: December 15, 2015.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE